IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CR-272-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| BARRY BUNN, | ) | |
| | ) | |
| Defendant. | ) | |

This case comes before the court on defendant's motion to dismiss (D.E. 22) count 1 of the indictment (D.E. 1). Defendant's supporting memorandum was incorporated into the motion. The government filed a response (D.E. 27) in opposition, and defendant filed a reply (D.E. 28). The motion was referred to the undersigned for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 18 Mar. 2015 Docket Entry). For the reasons discussed below, it will be recommended that defendant's motion be granted and that count 1 of the indictment be dismissed.

## BACKGROUND

On 3 January 2013, defendant pleaded guilty in the District Court of Johnston County, North Carolina to charges of (1) possession of cocaine with the intent to sell and deliver and (2) sale and delivery of a schedule II controlled substance, each in violation of N.C. Gen. Stat. § 90-95(a)(1).[1] (3 Jan. 2013 J. (D.E. 22-1) 2-3). The date of both offenses was 28 August 2012. (*Id*. at 2). The offenses are each class H felonies, and they were consolidated for judgment. (*Id*.). Based on defendant's criminal history, the court determined defendant's prior record level ("PRL") to be II. (*Id*.). Because no findings of mitigating or aggravating factors were made, the

---

[1] While the judgment references only subsection (a) with respect to the first offense, it would appear to constitute a violation of subsection (a)(1).

court imposed a sentence within the presumptive range of sentences authorized by N.C. Gen. Stat. § 15A-1340.17(c). (*Id.*). The sentence imposed is expressed in the judgment as follows:

> The Court, having considered evidence, arguments of counsel and statement of defendant, Orders that the above offenses, if more than one, be consolidated for judgment and the defendant be imprisoned for a minimum term of 8 months [and] for a maximum term of 19 months in the custody of N.C. DAC [*i.e.*, Division of Adult Correction[2]].

(*Id.*). In addition, the court suspended the sentence and placed defendant on supervised probation for 18 months. (*Id.*).

On 12 November 2014, defendant was charged in this court in a two-count indictment (D.E. 1) with the following offenses: possession of a firearm by a person convicted of a crime "punishable by imprisonment for a term exceeding one year," that is, a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (ct. 1), and possession of a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(k) and 924 (ct. 2). (Indict. 1). The alleged offense date in each count is 18 September 2013. (*Id.*). The predicate crimes underlying the charge in count 1 are the foregoing North Carolina state convictions. (*See* 3 Jan. 2013 J. 2). On 23 February 2015, defendant filed the instant motion seeking dismissal of count 1 on the grounds that his prior North Carolina convictions were not for crimes "punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

## **DISCUSSION**

Before turning to defendant's argument, the court will review the North Carolina sentencing law applicable to defendant's state convictions as well as recent amendments to that law by the North Carolina Justice Reinvestment Act of 2011 ("JRA"), 2011 N.C. Sess. Laws 192.

---

[2] The Division of Adult Correction, which is part of the Department of Public Safety, is responsible for "corrections and the rehabilitation of adult offenders, including detention, parole, and aftercare supervision." N.C. Gen. Stat. § 143B-704(a).

I.   **North Carolina Structured Sentencing**

North Carolina employs a "structured sentencing" scheme to determine the sentence for a convicted defendant. *See* N.C. Gen. Stat. § 15A-1340.10, *et seq*. For felony sentencing, the scheme employs a grid showing minimum sentences in which the applicable horizontal row is chosen based on the class of the offense (classes A through I) and the vertical column is then selected based on the defendant's PRL (levels I through VI). *Id*. § 15A-1340.17(c). Within each cell on the grid are three ranges of minimum sentences: a presumptive range, a mitigated range, and an aggravated range. *Id*.

A trial court may select a minimum sentence within the presumptive range with no further factual findings. *See id*. § 15A-1340.16(c) (providing that "[t]he court shall make findings of the aggravating and mitigating factors present in the offense only if, in its discretion, it departs from the presumptive range of sentences"). On the other hand, a trial court may select a minimum sentence within the mitigated range or the aggravated range only if mitigating or aggravating facts, respectively, have been found, and any such findings are made in writing. *Id*. While the trial court, itself, may make findings of any mitigating factors (*id*. at (b)), "only a jury may determine if an aggravating factor is present in an offense." *Id*. § 15A-1340.16(a1). After determining a defendant's minimum sentence under the above procedure, the court must impose the maximum sentence specified for that minimum sentence in § 15A-1340.17(d) (for Class F through I felonies) or (e) (for Class B1 through E felonies).

II.   **The JRA**

The JRA, which became effective on 1 December 2011, made significant changes to the sentencing law of North Carolina aimed at decreasing the prison population and reducing overall spending on corrections. *See JRA Implementation Eval. Rep't of the N.C. Sentencing and Policy*

*Advisory Comm'n* ("JRA Eval. Rep't") (15 April 2012) 1.[3]  Material to the matter at issue is the JRA's expansion of mandatory post-release supervision ("PRS") to all felonies.  This change was made in response to a report of the Council of State Governments Justice Center ("CSG"), which recommended that North Carolina increase PRS of defendants to reduce re-arrest rates.  *See* "*Justice Reinvestment In North Carolina: Analysis and Policy Framework to Reduce Spending on Corrections and Reinvest in Strategies to Increase Public Safety*," CSG (2011).[4]  Prior to the JRA, a 9-month period of PRS was required for only Class B1 to E felonies.  *See* N.C. Gen. Stat. § 15A-1340.17(d) (version in effect from 1 Dec. 2009 to 30 Nov. 2011).  The JRA added a mandatory 9-month period of PRS for Class F to I felonies and increased the period of PRS for Class B1 to E felonies to 12 months.  *See* JRA § 2.(b).  The revised statute now provides as follows:

> [A] prisoner . . . shall be released from prison for [PRS] on the date equivalent to his maximum imposed prison term less 12 months in the case of Class B1 through E felons and less nine months in the case of Class F through I felons, less any earned time awarded . . . .

N.C. Gen. Stat. § 15A-1368.2(a).

To account for this increase in or addition of a mandatory term of PRS, adjustments were made to the tables of maximum sentences for felonies.  In particular, the maximum terms for Class F through Class I felonies were each increased by 9 months.[5]  *Id*. § 15A-1340.17(d).  For example, where previously a minimum term of 8 months had a corresponding maximum term of

---

[3] Available at http://csgjusticecenter.org/jr/north-carolina/publications/justice-reinvestment-in-north-carolina-analysis-and-policy-framework-to-reduce-spending-on-corrections-and-reinvest-in-strategies-to-increase-public-safety/ (last visited 27 April 2015).

[4] Available at http://csgjusticecenter.org/wp-content/uploads/2012/12/JR_North_Carolina_policy_framework_v8mg_mc.pdf (last visited 27 April 2015).  CSG provided this report in response to a 2009 request from North Carolina's executive, legislative, and judicial leadership for CSG to evaluate North Carolina's criminal justice system and to develop strategies to address the state's increasing prison population.  *See* JRA Eval. Rep't 1.

[5] The issue raised by the instant motion would not arise with respect to Class B1 through E felonies given that even the minimum sentences for those felonies exceed 12 months.  *See* N.C. Gen. Stat. § 15A-1340.17(c).

10 months, *see id*. § 15A-1340.17(d) (version in effect from 1 Dec. 2009 to 30 Nov. 2011), the corresponding maximum is now 19 months, *see id*. (effective 1 Dec. 2011).

If a defendant commits a violation of any condition of PRS, the Post-Release Supervision and Parole Commission (the "Commission") has the option either to "continue the supervisee on the existing supervision, with or without modifying the conditions or, if continuation or modification is not appropriate," to revoke PRS. *Id*. § 15A-1368.3(c). Subject to an exception for sex and minor-abuse offenders,[6] where a defendant violates PRS by committing another crime, *see id*. § 15A-1368.4(b), or absconding, *see id*. § 15A-1368.4(e)(7a), the Commission may revoke PRS and return the defendant to prison for a period "up to the time remaining on [his] maximum imposed terms." *Id*. § 15A-1368.3(c)(1); *see also State v. Corkum*, __ N.C. App. __, 735 S.E.2d 420, 424 (2012) ("[T]he nine-month sentence [of PRS] is the remainder of the original sentence which is activated as a result of defendant's failure to comply with terms of his [PRS]."). For other types of violations, the Commission may return the offender to prison for a period of three months. N.C. Gen. Stat. § 15A-1368.3(c)(1). Prior to revocation, a defendant is entitled to both a preliminary hearing before a "judicial official" or a "hearing officer designated by the Commission" and a final hearing before the Commission. *Id*. § 15A-1368.6(c)-(e).

## III. Analysis

As previously noted, defendant seeks dismissal of count 1 of the indictment on the grounds that he has not been convicted of "a crime punishable by imprisonment for a term exceeding one year" as required for conviction under 18 U.S.C. § 922(g)(1). The issue raised by defendant's motion is simply stated. He argues that the maximum period of imprisonment he

---

[6] Defendants convicted of sex offenses or offenses involving the abuse of a minor may have their PRS revoked for any violation of PRS. *See* N.C. Gen. Stat. § 15A-1368.3(c)(1).

could have received, and in fact did receive,[7] under North Carolina law at the time of his conviction was only 10 months because the 9-month period of PRS added by the JRA does not constitute punishment by "imprisonment." Stated differently, he contends that his sentence of 8 to 19 months has two components: an initial period of 8 to 10 months of imprisonment followed by a 9-month period of PRS. The court agrees.

A plain reading of the applicable North Carolina sentencing statutes makes it clear that the last 9 months of a defendant's maximum sentence is not a term of imprisonment, but rather a mandatory term of PRS. The state court is required to impose the specific maximum term set out in § 15A-1340.17(d), which now includes the 9-month period of PRS, and the Division of Adult Correction is required to release a defendant to serve this term of PRS, *see id*. § 15A-1368.2(a) (providing that that defendants convicted of Class F through I felonies "*shall be released* from prison for [PRS] on the date equivalent to [the] maximum imposed prison term . . . *less nine months*" (emphasis added)). Moreover, a defendant cannot opt to satisfy this period of PRS by remaining in prison as permitted for a defendant on parole. *Compare id*. § 15A-1368.2(b) (providing that "[a] prisoner *shall not refuse* [PRS]" (emphasis added) *with id*. § 15A-1371(e) (providing a defendant with the option to "refuse parole and to serve the remainder of his term of imprisonment").

Accordingly, here, on the date of defendant's conviction, there were no conditions that existed under which he could have lawfully been made to serve a term of imprisonment greater than 10 months. Consequently, his conviction does not qualify as a predicate felony for the purposes of 18 U.S.C. § 922(g).

---

[7] The range of minimum terms in the presumptive range for a Class H felony for a defendant with a PRL of II is 6 to 8 months. N.C. Gen. Stat. § 15A-1340.17(c). Here, the court imposed the highest available minimum sentence of 8 months, and, accordingly, defendant received the corresponding highest maximum term of 19 months. *Id*. § 15A-1340.17(d).

6

Case 5:14-cr-00272-FL   Document 31   Filed 04/27/15   Page 6 of 13

The government contends that, as a technical matter, defendant's term of "imprisonment" is 19 months because of various statutory references to the maximum terms set forth in the table as terms of "imprisonment." In particular, the government cites to N.C. Gen. Stat. § 15A-1340.13(c), which requires the judgment of conviction to state both the "minimum term of imprisonment" as well as the corresponding "maximum term of imprisonment." The government also cites to the introductory language of the table of maximum terms, which describes the table as containing the "maximum term[s] of imprisonment." *Id.* § 15A-1340.17(d). Further, the statutory definition of PRS is "[t]he time for which a sentenced prisoner is released from prison before the termination of his *maximum prison term*." *Id.* § 15A-1368(a)(1) (emphasis added). The statute pertaining to PRS eligibility and procedure also states that a defendant's release for PRS is on "the date equivalent to his *maximum imposed prison term* . . . less nine months." *Id.* § 15A-1368.2(a) (emphasis added).[8]

The government would have the court accept this language as dispositive of whether the 9-month term of PRS constitutes "imprisonment" for the purposes of 18 U.S.C. § 922(g).[9]

---

[8] The government also cites to N.C. Gen. Stat. § 15A-1368.2(f), but this section does not refer to the period of PRS as being included in the term of "imprisonment." Rather, it provides that "[w]hen a supervisee completes the *period* of [PRS], the *sentence or sentences* from which the supervisee was placed on [PRS] are terminated." *Id.* § 15A-1368.2(f) (emphasis added). This language supports the defendant's position that the while the PRS term is part of the sentence, it is separate from the portion of the sentence that is a term of *imprisonment*. The government's citation to this provision in support of its position is one of several instances in its argument in which it appears to conflate the terms "sentence" and "term of imprisonment." For example, the government describes the change made by the JRA as "increas[ing] the applicable maximum *sentences* for state felonies to build in additional time *within each sentence* for every convicted felon to serve a *term* of [PRS]." (Gov.'s Resp. 4 (emphasis added)). The government also describes the North Carolina statutory scheme after the JRA as one in which "a defendant is released from prison 'before' the termination of his *maximum sentence* to complete a *term* of [PRS] included in that *maximum sentence*." (*Id.* at 8 (emphasis added)). The government even summarizes its description of the sentence defendant received here as a "maximum sentence of 'imprisonment'" which "was nineteen months: a period of *ten months in prison* followed by *nine months of post-release supervision*." (*Id.* at 9 (emphasis added)). This failure to be more precise in its distinction between the concept of a "sentence" and a "term of imprisonment" renders the government's argument less helpful to the court and even serves to undermine its position on the issue.

[9] The court does not understand the government to be asserting that PRS is factually equivalent to "imprisonment." Accordingly, the court declines defendant's invitation to debate the distinction between the meaning of the terms "imprisonment" and "release." In any event, such an argument would quickly wilt with the application of any accepted definition of these terms as illustrated by *United States v. Johnson*, 529 U.S. 53 (2000). In that case, the

However, acceptance of the government's argument would require the court to ignore the other relevant provisions of North Carolina sentencing law discussed above that clearly indicate otherwise. As the Fourth Circuit has instructed, in determining whether a defendant's North Carolina conviction is "punishable by imprisonment for more than one year," a court must "place [defendant's] prior North Carolina conviction in the context of the unique statutory regime mandated" by North Carolina law. *United States v. Simmons*, 649 F.3d 237, 240 (4th Cir. 2011) (en banc). Furthermore, given that one of the primary purposes of the JRA is to reduce the North Carolina prison population, it would be unreasonable to construe the legislature's addition of a term of PRS to Class F to I felonies as intending to *increase* the term of imprisonment for these offenses. More fundamentally, the ultimate issue before the court is not whether the 9-month PRS term constitutes "imprisonment" under North Carolina law, but rather whether it constitutes "imprisonment" under federal law for purposes of 18 U.S.C. § 922(g).

The government takes the additional position that the entire 8- to 19-month term defendant faced qualifies as "imprisonment" because defendant might ultimately be required to serve the 9-month period designated for PRS in incarceration if his PRS is revoked for a future

---

defendant, who had two of his convictions vacated, argued that his term of supervised release began not on the date of his actual release from incarceration, but rather on the date he should have been released absent the two invalid convictions. *Id*. at 56. The Supreme Court rejected this argument based on the language of 18 U.S.C. § 3624(e), which provides that a term of supervised release "commences on the day the person is released from imprisonment." 18 U.S.C. § 3624(e). The Court explained:

> There can be little question about the meaning of the word "release" in the context of imprisonment. It means "[t]o loosen or destroy the force of; to remove the obligation or effect of; hence to alleviate or remove; . . . [t]o let loose again; to set free from restraint, confinement, or servitude; to set at liberty; to let go." Webster's New International Dictionary 2103 (2d ed.1949). As these definitions illustrate, the ordinary, commonsense meaning of release is to be freed from confinement. To say respondent was released while still imprisoned diminishes the concept the word intends to convey.

*Johnson*, 529 U.S. at 57. The Court further noted that while the term of imprisonment and the term of release are "related, for the latter cannot begin until the former expires," they "are not interchangeable." *Id*. at 58-59.

violation.[10] This argument, of course, raises the question of whether an offense is "punishable by imprisonment" under 18 U.S.C. § 922(g) when such an additional period of imprisonment is fully dependent on a defendant's future violation of a condition of PRS *and* a resulting revocation of PRS by the Commission. As recognized by defendant, this precise issue has not yet been addressed by the Fourth Circuit.[11] However, the court concludes that it can be resolved by application of current Fourth Circuit law, including *Simmons* and its progeny.[12]

In *Simmons*, the Fourth Circuit "changed the way [it] determines whether prior convictions for certain lower-level North Carolina felonies are punishable by more than one year in prison." *Miller v. United States*, 735 F.3d 141, 145 (4th Cir. 2013). Previously, the determination required consideration of "the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." *United States v. Harp,* 406 F.3d 242, 246 (4th Cir. 2005) (emphasis original). Under *Simmons*, the court is

---

[10] Based on this potential for future revocation, the government attempts to draw a comparison between PRS and North Carolina's former system of parole, which was abolished by the Structured Sentencing Act of 1993, 1993 N.C. Sess. Laws 2299, for offenders sentenced after 1 October 1994. While it is true that defendants serving a period of PRS or parole are subject to revocation of their release upon violation of a condition, the similarity of these two schemes ends there for the purposes of the court's analysis. A period of PRS is a component of the sentence imposed on the day of conviction and must be served. However, parole is not part of the original sentence, but rather the early release of a defendant at the discretion of the Commission after serving a portion of a lawfully imposed term of imprisonment. *See* N.C. Gen. Stat. § 15A-1371(d) (setting forth criteria the Commission may consider when determining whether to release a prisoner on parole). In other words, whether or not a defendant may be released on parole after serving a portion of a term of imprisonment does not affect a determination of the term of imprisonment imposed on the day of conviction.

[11] This issue is the subject of pending appeals in the Fourth Circuit originating from both this district, *see United States v. Davis*, No. 5:14-CR-107-BR (E.D.N.C.) (rejecting government's position, *see* transcript of 9 Mar. 2015 sentencing hearing (D.E. 46) 2:21 to 12:6), *appeal pending at* No. 15-4208 (4th Cir.), and the Middle District of North Carolina, *see United States v. Barlow*, No. 1:14-CR-182-NCT-1 (M.D.N.C.) (accepting government's position, *see* transcript of 4 Aug. 2015 change of plea hearing (D.E. 37) 2:25 to 21:15; 33:5-19), *appeal pending at* No. 15-4114 (4th Cir.).

[12] In support of its argument, the government cites to the decisions of two other federal circuit courts concluding that the maximum sentence is determined by looking at the time that a defendant would be required to serve in prison before the mandatory suspension of the term of imprisonment by the court for first-time offenders. *See United States v. Caicedo-Cuero*, 312 F.3d 697, 704-05 (5th Cir. 2002); *United States v. Arellano-Torres*, 303 F.3d 1173, 1178-79 (9th Cir. 2002). The court finds these cases inapposite here given that they involve different statutory sentencing schemes, pertain to a suspended sentence and not a period of PRS, and, more importantly, were decided long before the Supreme Court's decision in *Carachuri-Rosendo v. Holder,* 560 U.S. 563 (2010).

now required "to look at how much prison time the defendant was exposed to given his own criminal history *at the time he was sentenced* and any aggravating factors that were actually alleged against him." *Miller*, 735 F.3d at 146 (emphasis added). The basis for this change in circuit precedent was the United States Supreme Court's decision in *Carachuri-Rosendo v. Holder,* 560 U.S. 563 (2010). In *Carachuri*, the Court held that when determining what constitutes an aggravated felony for the purposes of the Immigration and Nationality Act, the state offense of record cannot be enhanced by looking at facts outside the offense of conviction. *Carachuri*, 560 U.S. at 576 ("[W]e are to look to the conviction itself as our starting place, not to what might have or could have been charged."); *see also United States v. Zambrano*, 437 Fed. Appx. 250, 252 (4th Cir. 2011) (discussing *Carachuri* holding).

Following the reasoning in *Carachuri*, the *Simmons* court held that a district court is precluded "from considering hypothetical aggravating factors when calculating [a defendant's] maximum punishment." *Simmons*, 649 F.3d at 244. The court further explained that "the 'mere possibility that [Simmons's] conduct, coupled with facts outside the record of conviction, could have authorized' a conviction of a crime punishable by more than one year's imprisonment cannot and does not demonstrate that Simmons was actually convicted of such a crime." *Id.* at 244-45 (quoting *Carachuri*, 560 U.S. at 582); *see also United States v. Valdovinos*, 760 F.3d 322, 327 (4th Cir. 2014) ("[T]he critical question for purposes of a federal sentence enhancement is whether the particular defendant's prior *offense of conviction* was itself punishable by imprisonment exceeding one year." (emphasis original)); *United States v. Kerr*, 737 F.3d 33, 43 (4th Cir. 2013) (reiterating that "[t]he core of *Simmons* is (obviously) its holding, informed by Supreme Court precedent, of how the 'mere possibility' of a defendant's conduct, 'coupled with facts outside the record of conviction,' was insufficient for concluding that a conviction was

punishable by more than one year's imprisonment" (quoting *Simmons*, 649 F.3d at 244-45)), *cert. denied,* 134 S. Ct. 1773 (2014), *reh'g denied,* 134 S. Ct. 2694 (2014). In sum, "*Simmons,* and *Carachuri* before it, teach that we may not measure a defendant's maximum punishment based on a hypothetical charge, a hypothetical criminal history, or other 'facts outside the record of conviction.'" *Valdovinos*, 760 F.3d at 327 (quoting *Simmons*, 649 F.3d at 244).

Applying the above principles, the court concludes that a 9-month term of PRS cannot be counted in determining whether a North Carolina crime is punishable by more than one year in prison.[13] As previously discussed, on the date of defendant's conviction, the state court had no legal authority to impose a sentence that included more than 10 months' imprisonment. For defendant to be imprisoned for any additional period of time, he would have to later commit a violation of his PRS conditions *and* have his PRS revoked, not by the court, but by the Commission. Therefore, at the time he was sentenced, there were no facts in the record, or even in existence, that would lawfully subject him to a period of imprisonment greater than 10 months. Just as *Simmons* precludes consideration of a "hypothetical charge" or a "hypothetical criminal history," *Valdovinos,* 760 F.3d at 327, it also precludes consideration of a hypothetical future violation of PRS. In other words, the prohibition against consideration of a hypothetical defendant with the "worst possible criminal history," 649 F.3d at 242, forbids as well consideration of a defendant's worst possible criminal *future*.

---

[13] The court notes here the government's somewhat puzzling argument that a requirement to exclude the 9-month period of PRS when calculating the length of the term of imprisonment would be "unworkable" and a "thorny matter for courts to administer on a case-by-case basis." (Gov.'s Resp. 15). The government contends such a rule would require a court "to delve into the minutiae of analyzing the potential effects of credit for time served under North Carolina correctional regulations to determine whether a defendant actually served more than a year" and, thereby, violate the Fourth Circuit's rule that the court is to consider the sentence of imprisonment that the defendant could have received and not a defendant's actual sentence of imprisonment. (*Id*. at 16). The court is unclear why the government would make such a suggestion given that all that a court would be required to do is subtract nine months from the maximum sentence for any defendant.

11

Also material to the Fourth Circuit's analysis in *Simmons* was that the finding of aggravating factors to support the imposition of a sentence in the aggravated range was subject to a "panoply of procedural protections" under North Carolina law. *Simmons*, 649 F.3d at 244. The court, following similar reasoning in *Carachuri*, concluded that to permit consideration of such aggravating factors for the purposes of federal enhancements "would be to 'dismiss these procedures as meaningless.'" *Id.* (quoting *Carachuri,* 560 U.S. at 578-79). Thus, the significant procedural protections provided to a defendant alleged to have violated a condition of PRS, *see* N.C. Gen. Stat. § 15A-1368.6(c)-(e), further supports the conclusion that a possible future revocation of PRS cannot be considered in determining a defendant's maximum term of imprisonment for the purpose of 18 U.S.C. § 922(g).

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that defendant's motion (D.E. 22) to dismiss count 1 of the indictment be GRANTED and that count 1 be DISMISSED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 11 May 2015, or such other period as the court may direct, in which to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

SO ORDERED, this the 27th day of April 2015.

_____
James E. Gates
United States Magistrate Judge